IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 3, 2015

## GEORGE HARVEY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 12-04860     James M. Lammey, Jr., Judge**

---

**No. W2015-00224-CCA-R3-PC  -  Filed January 12, 2016**

---

The petitioner, George Harvey, appeals the denial of post-conviction relief from his 2013 Shelby County Criminal Court guilty-pleaded conviction of second degree murder, for which he received a sentence of 15 years.  In this appeal, the petitioner contends that his guilty plea was not knowingly and voluntarily entered and that he was denied the effective assistance of counsel.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Lance R. Chism, Memphis, Tennessee (on appeal); and Taylor Eskridge, Memphis, Tennessee (at trial), for the appellant, George Harvey.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jessica Banti, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On April 8, 2013, the petitioner, originally charged with one count of second degree murder and one count of employing a firearm during the commission of a dangerous felony, entered a plea of guilty to second degree murder in exchange for a sentence of 15 years' incarceration as a standard offender to be served at 100 percent by operation of law.  Prior to the entry of the plea, trial counsel and the prosecutor engaged in a discussion on the record regarding the plea offer that had been extended to the petitioner and the fact that a trial date had been set for August 5, 2013.  Because the plea offer was apparently unsatisfactory to the petitioner, trial counsel asked the court for "a couple/three weeks" of additional time so that he could meet with the prosecutor to "get

her to see the error of her ways, and we can come to an amicable agreement." Trial counsel informed the trial court that he would likely "file a motion for a[n] investigator to see if [he] can find witnesses to come and talk to [him] about what happened out there." The trial court agreed to reset the hearing for April 29.

After a pause in the proceedings, the trial court asked the prosecutor if "there's been a change of circumstances on" the petitioner's case, and the prosecutor replied in the affirmative, stating that she possessed "signed paperwork to murder second degree." Before continuing with the acceptance of the plea agreement, trial counsel asked the trial court for the opportunity to voir dire the petitioner, and the following exchange between trial counsel and the petitioner occurred:

> Q: Mr. Harvey, I was going to ask you a couple of questions about this matter. First of all, you were here when I had the judge give us some more time. Did you hear me ask him that?
>
> A: Yes, sir.
>
> Q: And did you hear him say he was agreeing to give us until the 29th to make a decision about this matter?
>
> A: Yes, sir.
>
> Q: And you also know that we have a trial already set for August the 5th. Did you know that?
>
> A: Yes, sir.
>
> . . . .
>
> Q: Now, one of the things that happened when I went back to talk to you, you were asking me to come – asked the prosecutor here – not to ask her but to tell her that you would take ten years at eighty-five percent right now. Did you ask me to do that?
>
> A: Yes, sir.
>
> Q: And I told you she refused that?

A:      Yes, sir.

Q:      Okay.   Then you said that you were willing to go through with this and take the fifteen years at a hundred percent right now?

A:      Yes, sir.

Q:      Is that what you want to do?

A:      Yes, sir.

Q:      Okay.  Now the little time that I've been working with you on this matter, were you satisfied with the things that I've done?

A:      Yes, sir.

Q:      And your witnesses have come down and talked to me – at least one of them has talked to me already about this?

A:      Yes, sir.

Q:      And you – with all of that, you still want to go on right now because you were telling me you just want to get this over with and be through with it.

A:      Yes.

Q:      Is that right?

A:      Yes, sir.

Q:      So, you want to let the judge know now that you want to take the fifteen years and move on with your life?

A:      Yes, sir.

Trial court:    That's what you want to do?

Q:      Is that what you want to do?

A:      Yes, sir.

Q:      Do you have any complaints about anything that I've done or not done?

A:      No, sir.

At this point in the proceedings, the prosecutor provided the court with a factual summary of the offense:

[The petitioner] will be pleading guilty to murder second, fifteen years as we've just discussed. The second count of the indictment will be [nolle] prossed without cost. It will be as a violent offender at one hundred percent.

Facts giving rise to the indictment are that on May the 7th, 2012, at approximately 10:30 p.m., the police department was called to 404 East Butler here in Shelby County, Tennessee, where Kashara Taylor (phonetic) was dead in the bedroom. Witnesses who were present said they were present when a shot was fired and that Kashara Taylor's boyfriend, [the petitioner], was the person responsible. He was not on the scene when the officers arrived, nor was there a weapon found.

The body of Kashara Taylor was sent to the Regional Forensic Center. Upon completion of autopsy, it was concluded that she died from a gunshot wound to the back of the head. It was ruled a homicde.

On May 10th, [the petitioner] turned himself into the felony response office and brought to the homicide office and there requested an attorney.

Those would be the facts had the matter gone to trial.

Had the matter gone to trial, the witnesses available to the [S]tate were friends and/or relatives of the [petitioner]; and therefore, any premeditation was going to be extremely

difficult to show; but we feel that a gunshot wound to the
back of the head is an intentional act and think this is a good
plea.

The defense stipulated to the facts as presented. The guilty plea hearing transcript evinces that the trial court conducted a thorough Tennessee Rule of Criminal Procedure 11(b) colloquy with the petitioner. In the colloquy, the trial judge informed the petitioner of the nature and sentencing range of the second degree murder charge, and the petitioner indicated his understanding of the potential sentencing. The petitioner also confirmed that he freely and voluntarily made the decision to accept the plea agreement.

Following the entry of the plea agreement, the petitioner filed, pro se, a timely petition for post-conviction relief, alleging that he was deprived of the effective assistance of counsel and that his guilty plea was not knowingly and voluntarily made. Following the appointment of counsel, the post-conviction court conducted an evidentiary hearing on January 9, 2015.

At the evidentiary hearing, the petitioner testified that trial counsel had represented him for approximately three months prior to the entry of the plea agreement and that counsel only visited him twice during that time period. The petitioner believed that trial counsel should have visited him "[a]t least twice out of a week." According to the petitioner, trial counsel had stated that it was important "to not go to trial." The petitioner asked trial counsel to interview witnesses, but trial counsel told him that it was unnecessary.

With respect to the entry of his guilty plea, the petitioner testified that trial counsel informed him that, if he went to trial, he would receive a sentence of 150 years and that it would be best for him to accept the offer of 15 years. The petitioner stated that counsel's exact words were "'I don't think that you should go to trial. You gonna lose if you go to trial. You're going to get a hundred fifty years, young man.'" The petitioner testified that he learned the true nature of his potential sentence when he arrived in prison, which prompted him to file his petition for post-conviction relief.

On cross-examination, the petitioner admitted that trial counsel did not force him to plead guilty but that he had followed counsel's advice to enter the guilty plea.

Trial counsel testified that he was the second attorney appointed to represent the petitioner and that it was his understanding that the petitioner had been displeased with his prior attorney. Trial counsel agreed with the post-conviction court that he had been appointed to represent the petitioner on March 6, 2013, and that the

petitioner had pleaded guilty one month later on April 8. Trial counsel recalled that he had spoken with the petitioner's witnesses but was unsure if he had talked with the petitioner's sister.

On the date of the entry of the plea agreement, trial counsel requested additional time to investigate the case and to further negotiate with the prosecutor. When trial counsel informed the petitioner of the continuance, the petitioner stated that he wished to "plead now and get it over with." Trial counsel testified that he carefully reviewed the plea agreement documents with the petitioner. Trial counsel denied that he ever told the petitioner or the petitioner's sister that the petitioner could receive a sentence of 150 years. Trial counsel explained that it was his practice to provide his clients with a "little green sheet" that reflected potential sentencing and to ask the clients to find their charged offense and accompanying sentence on the paper. Trial counsel denied telling the petitioner "not to worry about getting an investigation," noting that he had specifically asked for additional time to investigate the case.

At the conclusion of the hearing, the post-conviction court orally denied the petition for relief, finding as follows:

> Well, you know, Mr. Harvey, I know you're serving this fifteen years, but I have to tell you, you had at least two lawyers on this case. [Trial counsel] was on your case for a month. We've given him all the time on earth to prepare for trial. You indicated that you understood, under oath, at the time when I voir-dired you under oath that you understood, and you realized that you were facing twenty-five years at a hundred percent. I find it highly unlikely. In fact I don't believe you when you say he told you a hundred and fifty years. I believe [trial counsel], the exhibit, waiver. Just as he said, he underlined every single thing, and, "Do you have any questions?" and the answer is, "No." It is written right there for everyone to see.
>
> I don't know, Mr. Harvey, you know, you know, fifteen years is a long time. I understand. It's not as long as twenty-five years. And I find that you entered this guilty plea freely and voluntarily, and you pretty much said so today.
>
> I don't think there was deficient performance on behalf of [trial counsel], and he was willing to take it to trial. I know [trial counsel], he would just rather try a case as to plead it. I

mean, if the client is being particularly stubborn and wishes to go to trial, he's more than happy to do it. And so, I mean, you know, he only had it a month. That was after you weren't pleased with your public defender. An investigation was done. So, I don't see where his performance was deficient in any respect; therefore, assuming there was some sort of deficiency, I don't think it had any bearing on the outcome that would warrant granting a petition for post-conviction relief.

. . . .

I don't see where [trial counsel] was at fault in any way, and the petition for post-conviction is denied[.] . . .

In this appeal, the petitioner reiterates his claims of ineffective assistance of counsel and an involuntary guilty plea, claiming that trial counsel performed deficiently by informing the petitioner that he would receive a sentence of 150 years and that he would lose if he went to trial. The State contends that the post-conviction court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Apart from whether a guilty plea is the product of ineffective assistance of counsel, it is invalid if otherwise made unknowingly or involuntarily. "Whether a plea was knowing and voluntary is an issue of constitutional dimension because '[t]he due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)). A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Wilson*, 31 S.W.3d at 195 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).

A claim of ineffective assistance of counsel is a mixed question of law and fact, *see Kendrick*, 454 S.W.3d at 457, as is a claim of involuntary guilty plea, *see Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record fully supports the ruling of the post-conviction

court.  The record of the guilty-plea submission hearing and the explicitly accredited testimony of the petitioner's trial counsel, as well as the explicitly discredited testimony of the petitioner, evince the petitioner's understanding of the proceedings and his willingness to enter into the plea agreement.  Moreover, the record amply demonstrates that trial counsel rendered effective assistance in representing the petitioner.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE